PATRICK F. DESJOURDY *vs.* BOARD OF REGISTRARS OF VOTERS OF UXBRIDGE & another.

Worcester. November 5, 1970. — February 9, 1971.

Present: TAURO, C.J., SPALDING, REARDON, & QUIRICO, JJ.

*Elections. Mandamus.*

A petition for a recount after a town election stating the subscribers' belief that "the absentee ballots and the applications therefor . . . [were] in error" satisfied the requirement of G. L. c. 54, § 135, par. 2, that such a petition specify "wherein . . . [the subscribers] deem . . . [the election] records . . . to be in error." [667–668]

Although a petition for a recount after a town election specified only the subscribers' belief that the absentee ballots and the applications therefor were "in error," a recount of all the ballots cast for the office in question was required under G. L. c. 54, § 135, par. 8. [668]

<hr>

In a mandamus proceeding challenging the result of a recount after a town election, it was held that absence from the challenger's petition for the recount of a certificate of the Registrars of Voters of the number of names of subscribers to the petition which were names of registered voters did not invalidate the recount where it appeared that the respondent opponent of the challenger also sought the recount by a proper petition and asserted that the result was "legal and proper." [668–669]

The fact that a petition for a recount after a town election, which incorporated all the essentials of the form of petition furnished by the Secretary of State, was not on such form was not a deviation from the requirements of G. L. c. 54, § 135, so substantial as to invalidate the petition and therefore the recount. [669]

An examination of four protested regular ballots cast at a town election showed that three of them contained votes which were clearly intended for a certain candidate and were erroneously counted as blanks, and that the fourth ballot contained a vote which was clearly intended for another candidate and was properly counted for him. [669–670]

The jurisdiction in equity granted to courts by G. L. c. 54, § 103, to deal with matters pertaining to absentee ballots in elections is not exclusive but is concurrent with the traditional jurisdiction of the courts in election contests by way of mandamus, and does not preclude consideration of the validity of an absentee ballot in a mandamus proceeding. [670]

An absentee ballot in an election was invalid under G. L. c. 54, § 92, where it appeared that it had not been marked by the voter in the presence of an official, and that the affidavit on its official envelope had not been signed by an official in the presence of the voter. [671]

PETITION for a writ of mandamus filed in the Superior Court on March 27, 1969.

The case was heard by *Lappin*, J.

*Philip J. Murphy* (*John G. Kottis* with him) for the petitioner.

*Francis J. Larkin* for the respondent Radzik (*Thomas J. Lynch, Jr.*, Town Counsel, for the respondent Board of Registrars of Voters of Uxbridge, with him).

REARDON, J. This is a petition for a writ of mandamus brought against the board of registrars of voters of Uxbridge (the board) and Charles J. Radzik, Jr. (Radzik). It seeks a determination that a certificate of election as selectman of Uxbridge be issued to the petitioner. The judge ordered judgment dismissing the petition, and the petitioner appealed. The facts, most of which appear in a supplementary

statement of agreed facts and are essentially undisputed, are as follows.

A town election was held on March 11, 1969.  On a count of votes for the office of selectmen it appeared that Radzik had received 883 votes, the petitioner 882, one Shugrue 600, and that twenty-three votes were blanks.  The respondent Radzik was declared elected.  Both the petitioner and Radzik petitioned for a recount of votes, which took place on March 20, 1969.  On the recount the tally showed Radzik with 884 votes, the petitioner with 880, and Shugrue with 594, with thirty votes being counted as blanks.  The petitioner then brought his action alleging that some votes had been erroneously counted and that there were certain irregularities in the conduct of the recount, principally involving absentee ballots cast in the election.

Radzik filed a demurrer which was overruled and subsequently answered alleging that the petitioner's petitions for a recount were not in accordance with the provisions of G. L. c. 54.  He alleged further in his answer that the petitioner in seeking a writ of mandamus had not complied with the procedure provided in § 103 of that chapter for contesting "procedural irregularities, if any, in the absentee ballot procedure during the conduct of said election."  However, further answering he averred that both the town election and the recount of the election were conducted in accordance with the General Laws "and the results . . . were legal and proper."  The board in its answer denied allegations of an improper recount.

At the trial the judge admitted in evidence the petitions of the petitioner and Radzik for a recount, four ballots contested by the petitioner, eight contested by Radzik, and the absentee ballots with the applications and envelopes relating thereto.  The town clerk testified concerning her method of distributing absentee ballots, together with applications and envelopes, to those who came to her office.

The supplementary statement of agreed facts indicated that twenty-two of the twenty-five absentee ballots cast in the election and counted in both the original count and the

recount "were marked by the voters not in the presence of an official or officials authorized by law to administer oaths"; that the official envelopes enclosing those twenty-two ballots were signed by notaries public not in the presence of the voters, and that in both the election and the recount of the twenty-five absentee ballots sixteen were counted for Radzik, six for the petitioner, two for Shugrue, and one as blank.   The statement further disclosed that "[d]uring the course of the recount and prior to counting the absentee ballots the petitioner . . . requested that the respondent Registrars hold a hearing to investigate the challenged absentee ballots, particularly by examination under oath of the respondent Clerk.   This request was refused by the respondent Registrars."

In findings, rulings and an order for judgment, the trial judge ruled that the petitioner's petitions for a recount did not comply with G. L. c. 54, § 135, pars. 2 and 3, in that they did not specify wherein records made by the election officers were in error and also in that they did not contain a certificate of the board relative to the number of "names of subscribers [to the recount petitions] which are names of registered voters in [each contested precinct]."   Thus, without reaching the substantive question of the validity of the absentee ballots or the contested regular ballots, the judge stated that because of his ruling that the recount was invalid he made "no further findings concerning either the regular or absentee ballots that have been counted."   Having been requested to make a report of material facts, the judge adopted the findings, rulings and order for judgment as such, and the petitioner is before us on appeal.

1. We are unable to agree with the judge as to the invalidity of the recount due to a supposed defect in the petitioner's petitions therefor.   The petitions state the subscribers' belief that the "absentee ballots and the applications therefor are in error."   This language, indicating that the count of the absentee ballots was being challenged on the ground of noncompliance with the governing statute, is sufficient to satisfy the requirement in c. 54, § 135, par. 2,

that the petitions specify "wherein . . . [the subscribers] deem . . . [the election] records . . . to be in error."

General Laws c. 54, § 135, par. 8, provides that "[a]ll recounts shall be on the questions designated in the statements or petitions filed, . . ." but further provides "*except* that in the case of a recount of the ballots cast for an office, the votes cast for all of the candidates for such office, . . . shall be recounted" (emphasis supplied). The recount on Desjourdy's petitions specifying error relative to "the absentee ballots and the applications therefor" was valid for all ballots cast in the election for the office of selectman. One of course might wish for a more thorough specification, but there was no substantial deviation from the statutory requirement sufficient to vitiate the accuracy of the recount. *Clancy* v. *Wallace*, 288 Mass. 557, 563, 566. *Crosby* v. *Election Commrs. of Newton*, 350 Mass. 544, 547–548. We repeat what we have hitherto stated, "[W]e do not condone careless or studied noncompliance with the procedures which the Legislatuie has ordered for election officials," but at all times the principal objective is to determine the popular will. *Crosby* v. *Election Commrs. of Newton, supra,* at p. 548.

Nor are we disturbed by the lack of an accompanying certificate of the board. The *Crosby* case considered such a challenge to a recount but there, as here, the challenger (the petitioner in that case) "raised no issue at the recount relative to the validity of either petition." P. 546. In the present case, in fact, Radzik sought a recount himself, and his petitions appear to have been proper in all respects.[1] Furthermore, Radzik asserted in his answer that the result of the recount was "legal and proper." The *Crosby* case governs this aspect of what confronts us since it was there

---

[1] Thus even if we were to hold the petitioner's petitions for a recount defective, the recount would still be valid as having been held at the behest of Radzik. Since, however, we shall deal later with the validity of the absentee ballots, an issue which Radzik's petitions did not raise, we pass here on the sufficiency of the petitioner's petitions. There is no implication in so doing that in a case where both parties filed for a recount, and the petition of one party is defective but the registrar of voters considered the issues raised therein at a recount, a court is necessarily precluded on appeal from dealing with the issues so raised.

held that lack of a registrars' certificate on a petition which led to a concededly accurate recount was not an irregularity so substantial as to invalidate the recount.

Reliance of the trial judge on *Fitzpatrick* v. *Pope,* 307 Mass. 611, is misplaced. In that rescript opinion it appears that no recount was held and we properly refused to order a recount where no registrars' certificate had been submitted in the petition. The case is not authority for invalidating a recount which has already been held, where the party now seeking validation also sought the recount in the prescribed way and chose not to challenge the results of that recount.[2]

The final item, not referred to by the judge but now pointed out by the respondents, is the fact that the petitioner did not use the form supplied by the Secretary of State as provided by G. L. c. 54, § 135. However, this defect is not enough to invalidate the petitions and therefore the recount. The forms which the petitioner employed incorporated all the essentials of the official form.

2. Since we hold the recount valid we consider now the contested regular ballots. A determination of how these should have been counted might obviate the necessity of considering the validity of the absentee ballots.

The petitioner has contested four ballots before us (exhibits 3–6). Without extended discussion we hold that three of these were erroneously counted as blanks and should have been counted for the petitioner, while the fourth (exhibit 6) was properly counted for Radzik. Exhibit 3 shows a clear "X" for the petitioner and a clear intent to cross out what had been an "X" for Radzik. Exhibit 4 contains two blotted out marks opposite the names of Radzik and Shugrue and a clear "X" marked for the petitioner. In exhibit 5, the voter attempted to make an "X" opposite the name of

---

[2] Although Radzik, ..otwithstanding the position taken by him in his pleadings, introduced in evidence eight ballots challenged by him, he gave at the trial no reason for the introduction nor does he now argue that any of those ballots were improperly counted. Nonetheless, since we consider the recount to be valid, and since these ballots are before us, in the interest of fairness to the respondents we shall pass upon them.

the petitioner and indeed made a clear impression of an "X" on the ballot, although only one leg of his "X" is pencilled. There are no marks on the ballot for either Radzik or Shugrue. Exhibit 6, on the other hand, shows a clear check mark for Radzik, not made ambiguous by the fact that at the bottom it dips slightly into the box opposite Shugrue's name. An examination of the eight ballots protested by Radzik indicates that they were all properly counted. In view of these rulings the vote thus becomes 884 to 883 in favor of Radzik, causing us to move on to a consideration of the contested absentee ballots.

3. We deal briefly with the threshold argument that we cannot consider the validity of an absentee ballot in a mandamus proceeding, and that the sole remedy lies by way of a challenge to the ballots when and as cast under G. L. c. 54, § 96, or a subsequent bill in equity as provided in c. 54, § 103. We cannot agree with the suggestion that the provisions of § 103 provide an exclusive judicial remedy. Were that the case petitioners in actions such as this would be required to bring two separate proceedings, leading to an unnecessary proliferation of proceedings. In our view § 103 grants the courts a new jurisdiction in equity to deal with matters of absentee ballots, concurrent with their traditional jurisdiction in election contests by way of mandamus. This was the suggestion of *McRobbie* v. *Registrars of Voters of Ipswich,* 322 Mass. 530, where a proceeding in equity and one in mandamus relating to absentee and regular ballots respectively were consolidated without objection, and the court remarked that so far as the absentee ballots are concerned "a bill in equity *may* be employed . . ." (emphasis supplied). P. 531.

Since we have jurisdiction to hear this matter involving absentee ballots in a mandamus proceeding, we pass to the issue of their validity. We think that this issue was properly and sufficiently raised in the petitioner's petitions, a prerequisite under § 135, par. 8, for its consideration at the recount. The respondents do not contend that their refusal of the petitioner's request at the recount for a hearing on

this question was due to the fact that the issue had not been raised in the petitions for a recount and that therefore they were precluded by law from considering it. Rather, they answered that their refusal was "a proper exercise of their discretion." They therefore in effect conceded that the issue of validity may be raised now.

*DePetrillo* v. *Registrars of Voters of Rehoboth*, 342 Mass. 13, forms an instructive contrast with this aspect of the case being considered. There the petition for a recount related "only to the accuracy of the count of the ballots." Pp. 16–17. It appeared that the registrars did not consider the validity of the absentee ballots at the recount. We held that according to the terms of the statute they were precluded from considering that question, as also was the court on a petition for mandamus. As can be seen, that is not this case. It is clear that the twenty-two ballots which were not marked in the presence of a notary and the envelopes of which were signed by notaries outside the presence of the voters were invalid. They should not have been counted. The procedure followed violated G. L. c. 54, § 92, which sets up significant safeguards to insure that the ballot represents the will of the voter. Its violation results in more than simply a technical irregularity. Compare G. L. c. 54, § 97; *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 283. As these ballots stand, we have no way of knowing whether they were in fact marked by those in whose names they were received and cast.

General Laws c. 54, § 92, explicitly provides that absentee ballots witnessed by an official, except a city or town clerk, who is also a candidate for office, shall be defective. Section 94 provides further that if the affidavit on the envelope "has been improperly executed" the ballot shall be rejected. It follows a fortiori that where there was no official at all present while the voter marked the ballot, and where the affidavit on the envelope was executed in the absence of the voter, the ballot must be considered defective.

In view of the result we reach we do not consider the question whether the fact that the town clerk gave out bal-

lots and applications together to people who came to her office in violation of G. L. c. 54, §§ 89 and 91, would be alone sufficient to invalidate all twenty-five ballots.

Since sixteen of the absentee ballots were counted for Radzik and only six for the petitioner, two being counted for Shugrue and one blank, the invalidation of twenty-two of the ballots results in the loss of the election by Radzik even if the 884 to 880 tally which resulted from the recount is used as a base. This follows since the petitioner's vote total is reduced at the most by six, while Radzik's vote total is reduced by at least thirteen votes, assuming that the three valid votes were cast for him.

4. The order for judgment is reversed. Judgment shall enter for issuance of the writ to the respondent board commanding it to issue a certificate of election to the petitioner, who is to assume the office of selectman as soon as possible.

*So ordered.*