Bryce EDGMON, Applicant,

v.

STATE of Alaska, OFFICE OF LIEU-
TENANT GOVERNOR, DIVISION OF
ELECTIONS, Whitney Brewster, Director, Respondent,

Carl Moses, Intervenor.

No. S–12436.

Supreme Court of Alaska.

Feb. 16, 2007.

Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Applicant.

Sarah J. Felix, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Respondent.

Thomas P. Amodio, Amodio Stanley & Reeves LLC, Anchorage, for Intervenor Moses.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

This appeal arises out of a dispute over the results of a recount in the District 37 Democratic primary election. The incumbent representative, Carl Moses, requested a recount after the official election results showed Bryce Edgmon as the winner by one vote, with 765 votes for Edgmon and 764 votes for Moses. The State Division of Elections conducted a recount which showed Moses as the winner by one vote. Edgmon appealed the recount results, alleging that the Division had improperly failed to count six ballots.[1] Because the issues raised in this case required expedited resolution due to the deadlines for printing ballots in advance of the November 2006 election, we issued an oral order on the record on September 21, 2006, ruling that the five contested ballots should be counted. This opinion sets out the reasons for our ruling.

## II. FACTS AND PROCEEDINGS

Bryce Edgmon ran against incumbent Carl Moses in the Democratic Party primary election held on August 22, 2006 for the District 37 State House of Representatives seat. On September 12, 2006, the State Division of Elections certified the election results showing Edgmon with 765 votes as the winner over Moses, who received 764 votes. Moses requested a recount, which the Division conducted and which showed Moses as the winner by one vote, with 765 votes to Edgmon's 764. At the recount, Division Director Whitney Brewster determined that six ballots could not be counted.

Both candidates challenged the Division's determination that three ballots could not be counted because they were "overvoted." An "overvoted" ballot is when a voter "marks more names than there are persons to be elected to the office," in which case "the votes for candidates for that office may not be counted."[2] Brewster concluded that the three ballots had sufficient marks in the ovals next to both candidates so that AS 15.15.360(a)(4) precluded counting them. Two of the three ballots had completely shaded ovals next to Edgmon's name but also contained tracings that touched the edge of the ovals next to Moses's name. The third ballot had an "X" in the oval next to Moses's name but also had a line appearing to cross out both Edgmon's name and the oval next to his name.

The candidates also challenged the Division's decision not to count two special needs ballots.[3] A special needs ballot allows a qualified disabled voter to vote through a personal representative.[4] Brewster rejected two special needs ballots because the personal representative completed the lines for residence address, but left the lines for mailing address blank. The form has separate lines for the two addresses.

---

1. Although Edgmon originally appealed the Division's determination that six ballots could not be counted, all parties stipulated that one ballot was properly not counted because the voter was not registered.

2. AS 15.15.360(a)(4).

3. Edgmon also challenged one ballot disputing voter registration status. The parties later stipulated that Brewster properly determined that the ballot should not be counted.

4. AS 15.20.072.

On September 19, 2006, Edgmon appealed the Division's decisions, asking for an expedited hearing to review the Division's determinations. Moses moved to intervene and did not oppose Edgmon's request for an expedited hearing. The Division requested a decision no later than September 22, 2006, to ensure that the ballots be sent to the printer in time to meet statutory distribution deadlines. We held oral argument on September 21, 2006, and issued a decision on the record that same day.

## III. STANDARD OF REVIEW

 No disputes of material fact exist in this case.[5] Resolution of the case requires that we interpret statutory provisions and apply those provisions to the facts. The interpretation of statutory provisions is a question of law that we subject to our independent review.[6] Under the independent judgment standard, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy." [7]

## IV. DISCUSSION

### A. Ballots Excluded as "Overvotes" Should Be Counted.

Edgmon argues that the Division should have counted three ballots that Brewster excluded as overvoted. The Division argues that all three ballots were overvoted in that they contained marks for both candidates. Proper disposition of the ballots requires that we carefully examine AS 15.15.360, which governs the counting of ballots.[8] Subsection .360(a)(4) directs the Division not to count a ballot if the voter marks more names than there are open seats for that office. Whether the Division appropriately categorized the ballots as containing overvotes depends on whether the markings next to the second name constituted "marks" to designate a vote.[9]

Subsection .360(a)(1) limits the ways a voter may "mark" a ballot to " 'X' marks, diagonal, horizontal, or vertical marks, solid marks, stars, circles, asterisks, checks, or plus signs that are clearly spaced in the oval opposite the name of the candidate." Subsection .360(a)(5) further clarifies which marks meeting the requirements of (a)(1) should be counted as votes, providing that "[t]he mark specified in (1) of this subsection shall be counted *only if* it is substantially inside the oval provided, or touching the oval *so as to indicate clearly that the voter intended* the particular oval to be designated." [10]

---

**5.** In our order of September 20, 2006, we ordered the parties to submit a list of any disputed material facts prior to oral argument on September 21. The parties submitted no list, confirming that no material facts were in dispute.

**6.** *N.W. CruiseShip Ass'n of Alaska v. State, Office of Lieutenant Governor, Div. of Elections,* 145 P.3d 573, 576 (Alaska 2006).

**7.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**8.** The relevant subsections of AS 15.15.360 provide:

(a) The election board shall count ballots according to the following rules:

(1) A voter may mark a ballot only by filling in, making "X" marks, diagonal, horizontal, or vertical marks, solid marks, stars, circles, asterisks, checks, or plus signs that are clearly spaced in the oval opposite the name of the candidate, proposition, or question that the voter desires to designate.

(2) A failure to properly mark a ballot as to one or more candidates does not itself invalidate the entire ballot.

(3) If a voter marks fewer names than there are persons to be elected to the office, a vote shall be counted for each candidate properly marked.

(4) If a voter marks more names than there are persons to be elected to the office, the votes for candidates for that office may not be counted.

(5) The mark specified in (1) of this subsection shall be counted only if it is substantially inside the oval provided, or touching the oval so as to indicate clearly that the voter intended the particular oval to be designated.

(6) Improper marks on the ballot may not be counted and do not invalidate marks for candidates properly made.

(7) An erasure or correction invalidates only that section of the ballot in which it appears.

**9.** If not, they are "improper marks" that do not "invalidate marks for candidates properly made." AS 15.15.360(a)(6).

**10.** AS 15.15.360(a)(5) (emphasis added).

■ Reading these provisions together, an overvote occurs if the voter has voted for two candidates with "marks" as defined by subsection. 360(a)(1) that clearly indicate the voter's intent to vote for more than one candidate.[11] Because a mark meeting the requirements of subsection. 360(a)(1) cannot be counted unless the voter's intent is clear, we begin by analyzing whether the second mark on each overvoted ballot clearly indicated the voter's intent to vote for a second candidate.

Moses argues in favor of a bright line rule that would consider the ballots overvoted without examining voters' intent. But the terms of the statute itself make voter intent paramount. The statute requires that before a mark is counted as a vote, it must comply with the requirements under subsection .360(a)(1) *and* clearly indicate voter intent as required by subsection .360(a)(5). These terms are mandatory and require strict compliance.[12] Contrary to Moses's argument that judicial review of ballots would open a "Pandora's Box," AS 15.20.510 specifically envisions such a review in a recount appeal, providing that "[t]he inquiry in the appeal shall extend to the questions whether or not the director has properly determined what ballots, parts of ballots, or marks for candidates on ballots are valid."

Moreover, we have consistently emphasized the importance of voter intent in ballot disputes. In *Willis v. Thomas*, we noted that ballots should be counted where they "present clear evidence of the voters' intent." [13] Similarly, in *Finkelstein v. Stout*, we held that ballots should be counted where a voting machine was "voting low" and the voters' intent was clear.[14] Other state high courts have also looked to voter intent in resolving ballot disputes. In considering a recount appeal, the Maine Supreme Judicial Court ruled that a ballot should be counted where a voter had placed an "X" next to two candidates' names, but had scribbled over one "X." [15] The court reasoned that "scribbling out ... [is a] common method[ ] used by voters to retract a cast vote," and noted that it was "unlikely that the voter intended to vote for two candidates for the same office." [16] Similarly, the Wisconsin Supreme Court has emphasized that "the voter shall not be disenfranchised because of mere mistake, but his intention shall prevail." [17]

■ The voters' intent on the three ballots excluded as "overvoted" is clearly to vote for only one candidate. The second marks are improper marks—not votes. At oral argument, the Division cited *Willis v. Thomas*[18]

11. Given the comma before the words "or touching the oval," the intent clause could be read to apply only to marks touching the oval. But we do not read the clause in such a limited manner. First, we can discern no reason for the legislature to mandate that voter intent apply only to one type of ambiguous mark. Second, the legislative history suggests the clause should apply to both circumstances. The original statute, enacted in 1960, contained a list of three circumstances where marks should count as votes: "The mark shall be counted only if it is substantially within the square provided, or touching the square and no other, or placed near the square so as to indicate clearly that the voter intended the particular square to be designated." Ch. 83, § 3.36(5), SLA 1960. A 1963 amendment deleted the last item in the list of three ("or placed near the square") but left the modifying intent clause. Ch. 80, § 8, SLA 1963. The presence of the comma is likely therefore explained by the fact that it originally separated a list of three. Based on this history and the importance of voter intent in election case law as detailed later in this opinion, we read the intent clause to apply to both types of ambiguous marks.

12. AS 15.15.360(b) provides that "[t]he rules set out in this section are mandatory and there are no exceptions to them."

13. 600 P.2d 1079, 1085 (Alaska 1979) (holding that voter's intent was not clear and punchcard ballots could not be counted for Willis where the voter circled the box opposite candidates' names and then punched out all of the circled boxes except that opposite Willis's name).

14. 774 P.2d 786, 792 (Alaska 1989); *see also Fischer v. Stout*, 741 P.2d 217, 221 (Alaska 1987) (holding that voter's intent was clear where voter used pen rather than the punchcard machine).

15. *In re Primary Election Ballot Disputes 2004*, 857 A.2d 494, 503 (Me.2004).

16. *Id.*

17. *Roth v. LaFarge Sch. Dist., Bd. of Canvassers*, 268 Wis.2d 335, 677 N.W.2d 599, 605 (2004) (quoting *State ex rel. Blodgett v. Eagan*, 115 Wis. 417, 91 N.W. 984 (1902)).

18. 600 P.2d at 1085.

for the proposition that a mark touching any part of the candidate's square should be counted as a vote. But as we emphasized in *Willis*, "the crucial question in determining the validity of ballot markings is one of voter intent." [19]

In the case of the two ballots with a completely shaded oval next to Edgmon's name and a trace touching the edge of the oval next to Moses's name, the voter completely shaded the oval for all other races on the ballot.[20] A review of the entire ballot therefore suggests that the voter understood the rules and used a completely shaded oval—not a trace of an edge of the oval—to indicate a vote. Under these circumstances, such stray marks cannot be read to clearly indicate an intent to vote a second time in the same race. Given the command of subsection .360(a)(5), that only marks clearly indicating an intent to vote be counted as votes, these marks cannot be counted as overvotes and the ballots should be counted as votes for Edgmon.

The third allegedly overvoted ballot has an "X" in the oval next to Moses's name and a line striking through Edgmon's name and the oval next to it. This ballot is not overvoted and should be counted. In all other races, the voter indicated a vote with a single "X" in the oval next to one candidate's name. The line extending through Edgmon's name cannot be said to indicate an intent to cast a vote for Edgmon. Instead, a marking crossing or striking out a candidate's name accompanied by a vote for the other candidate suggests an emphatic vote against a candidate. Where accompanied by an "X" in the oval next to the other candidate's name in the same manner as all other votes on the ballot, the line through Edgmon's name and the oval next to it is a stray marking. The ballot is not overvoted and should be counted as a vote for Moses.

## B. Special Needs Ballots Should Be Counted by the Division.

Edgmon challenges the Division's determination that two special needs ballots should not be counted where the personal representative completed the section for residence address, but did not separately fill out the blank for a mailing address. The Division argues that the representatives thus failed to set out their mailing addresses as required by statute.

Alaska Statute 15.20.072(c)(2) requires that personal representatives provide both residence and mailing addresses.[21] But we are persuaded that if the addresses are the same, a single listing meets the terms of the statute. As Moses notes, the statute does not require that the addresses be listed on separate lines or set out twice by individuals whose mailing and residence addresses are the same. Nor does the Division of Elections's form indicate that the address should be listed twice if the residence and mailing address are the same.[22] A reasonable person could infer that the second address line need only be completed if the mailing and residence addresses are different.

In this case, it is fair to infer that the personal representatives' mailing and residence addresses are the same. Both personal representatives reside in Anchorage. We take judicial notice that unlike some communities in the state, Anchorage is a community with home delivery for a significant portion of its residents. In each case, the representative listed a street name and number, along

19. *Id.*

20. *See, e.g., In re Primary Election Ballot Disputes 2004*, 857 A.2d at 504 (reasoning that "[g]iven the voter's demonstrated ability to comply with the instructions and fully darken ovals when voting, we cannot reasonably interpret this mark as anything other than a stray marking").

21. AS 15.20.072. The relevant portion of subsection (c) requires that

[i]f the request for a special needs ballot is made through a representative, the representative shall sign a register provided by an election official. The register must include the following information:
(1) the representative's name;
(2) the representative's residence and mailing address....

22. Nowhere does the form specify that both address sections must be completed, even if the addresses are the same.

with a postal zip code.[23] In each case, the address appears on its face to be both a mailing and a residence address. This is not a case where an individual has listed a post office box which could not possibly be a residence address,[24] or a park bench[25] which could not possibly be a mailing address. Moreover, the burden of proving a vote should not be counted is on the challenger to that vote.[26] The Division provided nothing to suggest that the addresses provided by the representatives were not both mailing and residence addresses.[27]

Not only do the addresses appear on their face to be both mailing and residence addresses, but an elections clerk reviewed the personal representatives' forms before issuing a ballot to them. Issuance of the ballot after receipt and review of the form suggests that Division staff found the form to meet statutory requirements at the time the ballot was issued. Given the importance of the "opportunity to freely cast [one's] ballot,"[28] we will not disenfranchise special needs voters where the personal representatives' forms appear on their face to comply with the statute.

Absent any specific statutory or regulatory requirement that addresses be listed separately, where there is a reasonable inference that the addresses are the same and the Division has failed to produce any evidence to suggest that the addresses are not the same, the ballots at issue must be counted.

## V. CONCLUSION

For these reasons, we ordered that the Division count the five contested ballots. Of the three ballots not counted as overvoted, two were to be counted as votes for Edgmon and one was to be counted as a vote for Moses. The two special needs ballots were returned to the Division to be opened and counted in accordance with Division procedures for counting special needs ballots.

CARPENETI, J., not participating.

---

23. Indeed, one of the personal representatives provided a nine-digit postal zip code.

24. See Fischer, 741 P.2d at 221 n. 7 (taking judicial notice that "human beings are of insufficiently diminutive stature to dwell comfortably within [a post office box]").

25. See id. at 221.

26. Finkelstein, 774 P.2d at 788.

27. The Division expressed concern at oral argument about the administrability of requiring the Division to determine whether an address is both a residence and a mailing address. However, the Division could resolve this by revising its form to specify that representatives must complete the mailing address section if different from the residence address.

28. Carr v. Thomas, 586 P.2d 622, 626 n. 11 (Alaska 1978) (citations omitted).