SANCHEZ v. BRAVO.
SOLIS v. DOMINGUEZ.

No. 12499.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 26, 1952.

Gordon Gibson, Laredo, H. P. Guerra, Jr., Rio Grande City, for appellant.

Bismark Pope, Laredo, for appellee.

PER CURIAM.

This appeal involves two election contests originating in Zapata County. The suits were transferred to Webb County and there consolidated for purposes of trial. Separate judgments were entered. In Cause No. 17,457, M. B. Bravo (the contestee) was declared the Democratic Nominee for County Judge of Zapata County by a vote of 768 to 714 over J. M. Sanchez (the contestant). In Cause No. 17,458, Hilario Dominguez (the contestee) was declared the Democratic Nominee for Constable, Precinct No. 2, Zapata County, by a vote of 194 to 189 for Joaquin Solis (the contestant).

Appellants' first four points complain of the action of the trial court in refusing to declare void some 191 of the absentee votes cast at the primary election. This makes it necessary for us to construe cer-

tain articles of the 1951 Election Code. This code, as passed by the 52nd Legislature, contained 14 chapters and approximately 250 consecutively numbered articles. The publishers of Vernon's Ann.Civ.Stats., have renumbered the various articles by designating each article by two numbers; the first being a chapter number, followed by the number of the article within the chapter. The two numbers are separated by a decimal point. In this opinion the number containing a decimal point is a reference to Vernon's Annotated Texas Statutes, Election Code. The number following in parenthesis is a reference to the article number of the Legislative Act. Acts 1951, 52nd Leg. p. 1097, ch. 492.

These causes were called for trial at 10 a. m. on August 18, 1952. Both sides announced ready. About 2 p. m. Matias Cuellar, County Clerk of Zapata County, was called as the first witness. He testified that during the course of the absentee voting in his office, no stub box was provided, but that the ballots after being marked by the voter were placed in the ballot box with the stub attached thereto. Based upon this testimony, appellants made a motion that the election be declared void or, in the alternative, that all absentee ballots cast in the office of the County Clerk be declared void. On August 19th, these motions were overruled as having no support in the pleadings. Appellants then sought leave to file trial amendments to meet the court's ruling, but such leave was denied upon the grounds that the same was presented after announcements of ready had been made and issue had been joined.

Two questions are presented: First, did the trial court abuse its discretion in refusing leave to amend? Second, were the absentee votes marked in the County Clerk's office invalid because the stubs were not separated therefrom and placed in a separate stub box?

The second question presents the issue that goes to the merits of this case and will be first considered.

The form of ballot and stub used in Texas elections is prescribed by Article 6.05(61). Article 8.15(97), relating to the stub box, contains the following provisions applicable to the voter who appears in person at the precinct polling place and casts his ballot on the day of the election:

"Depositing Ballots. When a voter who is voting in person shall have prepared his ballot, he shall immediately detach therefrom the perforated stub and affix his signature to the back of the same and deposit it in the stub box before depositing his ballot and without disclosing to anyone the number of his stub. Should the voter be unable to sign his name, he shall place the stub face down so as not to expose the number of his stub and he shall sign the same with an 'X' with the election judge placing the voter's name in the election judge's own handwriting, and the voter shall then drop the stub in the stub box before the voter deposits his ballot. The voter shall then fold the ballot so as to conceal the printing thereon, and so as to expose the signature of the presiding judge on the back of the ballot, then deposit the ballot in the proper ballot box, and unless the ballot is deposited in such ballot box and the stub in the stub box by the voter in person, the same shall not be counted as a vote in such election."

Article 5.05(37), containing 14 subdivisions, relates to absentee voting by the use of paper ballots. Two methods of voting absentee are there prescribed. A voter may send in his ballot by mail or he may appear in person in the office of the County Clerk and mark his ballot. The provisions of Article 5.05(37) are ambiguous and the procedures to be followed in case of mailed ballots, on the one hand, and ballots marked in the Clerk's office, on the other hand, are not separately and definitely stated. It seems apparent that many of the provisions which by following strictly the wording used could possibly be applied to ballots marked in the Clerk's office were not intended to apply thereto but were intended to apply only to mailed ballots. Unless this view is taken numerous conflicts are encountered.

We think the law clearly contemplates that a stub box should be used for absentee voting in the County Clerk's office.

Under the provisions of Article 2956, Vernon's Ann.Civ.Stats. (now repealed), from which Article 5.05(37) is largely taken, the absentee votes marked in the Clerk's office were placed in a carrier envelope and delivered to the election officials of the various precincts. In 1949, the Legislature adopted a form of ballot having a detachable stub. See amendments to Articles 2980, 3008, 3012, 3109 and 3122, Vernon's Ann.Civ.Stats., effected by Acts 1949, 51st Leg., p. 615, ch. 329. The provision of the 1949 enactment relating to absentee voting (numbered Article 2956–a by the publishers of Vernon's Ann.Civ.Stats.) reads as follows:

"The appropriate provisions of this Act shall also apply to absentee voting, in which case the person casting an absentee ballot shall not remove the detachable stub from the ballot. After the ballot has been prepared by the elector, the elector shall affix his signature on the reverse side of the perforated stub and then shall cast the ballot as now provided by law.

"Should the elector be unable to sign his name, he shall place the ballot face down so as not to expose the number of same and shall sign on the back of the perforated stub an 'X.' The attesting officer shall then write the elector's name on the back of the stub.

"The absentee ballot shall then be delivered to the election judge in the proper precinct as is now provided for in this title.

"Before the election judge deposits an absentee ballot as elsewhere provided for in this title, he shall detach from said ballot the perforated stub and place it in the stub box. If the name of the elector does not appear on the reverse side of said perforated stub the election judge shall write the name of the elector on the back of said stub before depositing same in the stub box."

Under the 1951 Election Code instead of the ballots marked in the County Clerk's office being delivered in an envelope to the various precinct election officials, provision was made for a special board to canvass the absentee votes. Article 5.05(37), subdivision 6.

Article 5.06(38) was designed to take the place of former Article 2956–a and reads as follows:

"The ballot used in absentee voting, except where voting machines are used, shall be the stub ballot provided for elsewhere in this Code. In voting at the county clerk's office provided for under Section 37 (art. 5.05), *the same procedure shall be used as voting at any regular voting place where voting machines are not used; the stubs being placed in a stub box furnished as for a regular polling place*. If the name of the elector does not appear on the reverse side of the perforated stub, the election judge shall write the name of the elector on the back of said stub before depositing same in the stub box. The stub box shall be delivered by the canvassers after the votes are counted to the district clerk, the ballot box to the county clerk and the returns to the proper official as provided by law for regular polling places."

The evident purpose of the Legislature was to change the procedure provided for in Article 2956–a, wherein the voter did not remove the detachable stub, and follow the procedure of Article 8.15(97) under which the voter removes the stub and deposits the same in the stub box. In fact, under the heading of historical comment under Article 5.06(38) the editors of Vernon's Ann.Civ.Stats., point out what is undoubtedly true, that, "The intention was to follow the same procedure in voting absentee at the county clerk's office in regard to the stub box as at any regular voting box."

The provision that, "If the name of the elector does not appear on the reverse side of said perforated stub the election judge shall write the name of the elector on the back of said stub before depositing same in the stub box" is a carry-over from the predecessor statute, Article 2956–a, and must be regarded either as meaningless or applicable to the action of the special canvassing board, art. 5.05(37), subdivision 6,

in canvassing the absentee ballots *mailed* to the office of the County Clerk. As indicated in the forepart of this opinion, there are perhaps other anomalies appearing in the code affecting the two classes of absentee ballots, resulting from the adoption of a special canvassing board procedure, but it is unnecessary to discuss them here. We hold that under the provisions of the 1951 Election Code, the person voting absentee in the county clerk's office should detach the stub from his ballot and deposit the same in a stub box which should be provided for that purpose. The absentee voting in Zapata County was not held in accordance with the applicable provisions of Article 5.06(38).

■ However, we are of the opinion that the enactment relating to the depositing of the stubs in a stub box and the placing of the ballot proper in another box are directory insofar as absentee voting is concerned. In Davis v. Walcott, Tex.Civ. App., 96 S.W.2d 817, decided in 1936, this Court pointed out that the statutory provisions relating to absentee voting are full and complete within themselves. The general legislative pattern has not changed since that time. Prior to the adoption of the 1951 Election Code, there was no provision avoiding a ballot because of failure of election officials or the voter to strictly follow the provision relating to the voting of stub ballots. Articles 2956 and 2956a, Vernon's Ann.Civ.Stats., although Article 3012, Vernon's Ann.Civ.Stats., relating to voting on election day does contain an invalidating clause. Article 5.06(38) of the 1951 Election Code effects a change in procedure in handling ballots in the clerk's office from that previously in force. This is accomplished by providing that, "In voting at the county clerk's office * * * *the same procedure* shall be used as voting at any regular voting place where voting machines are not used; the stubs being placed in a stub box furnished as for a regular polling place." Although the procedure of Article 8.15(97) is adopted, the penalty of voiding the ballot for violation of such procedure is not.

■ The right of the citizen to cast his ballot and thus participate in the selection of those who control his government is one of the fundamental prerogatives of citizenship and should not be impaired or destroyed by strained statutory constructions. If in the interests of the purity of the ballot the vote of one not morally at fault is to be declared invalid, the Legislature must say so in clear and unmistakable terms. Thomas v. Groebl, 147 Tex. 70, 212 S.W. 2d 625; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817.

For the reasons stated, we hold that the trial court did not err in refusing to strike out and not consider the absentee votes marked in the county clerk's office.

■ It follows that any error which may have been committed by refusing appellants' leave to amend was harmless. We will say, however, that the trial judge has a large discretion over the allowance of amendments and because of shortness of time for the disposition of primary election contests may well restrict the pleadings to those matters declared upon before announcements of ready have been made. Article 13.30(208).

■ Appellants' remaining points relate to certain named voters, 110 in number, and it is urged that said persons' ballots should not have been counted because they were aliens, or non-residents of the County or Precinct in which they voted, or because they held no poll tax or exemption certificates, or were in military service. Some evidence relating to most of the named individuals is set forth in appellants' brief, but it is stated that "all the evidence concerning each voter is not copied in the brief, only (that) sufficient to make a prima facie case." Appellees' brief contains further statements with reference to the evidence adduced relating to each of the voters and we have examined the statement of facts filed in the case.

In the pleadings relating to the contest of the nomination for constable, it was alleged that 17 out of the 110 votes questioned for the various reasons stated were cast in the race for constable, Precinct No. 2.

We shall attempt no detailed discussion of the evidence relating to each person

.. 

whose voting qualifications were challenged. In the great majority of cases questions of fact were raised for the trial court's determination and insofar as the contest for the nomination of County Judge is concerned, it is clear that upon the evidence enough votes could not be voided to change the declared results of the primary. Neil v. Pile, Tex.Civ.App., 75 S.W.2d 899; Willow Hole Independent School District v. Smith, Tex.Civ.App., 123 S.W.2d 708.

We think that this situation is likewise true of the contest for constable. It appears that much of appellants' testimony as to Precinct No. 2 voters was given by three witnesses. Typical testimony of such witnesses was that the voter whose ballot was challenged "had never been known to live in Precinct No. 2, Zapata County," or that the witnesses were unacquainted with the voters, and the like. While this testimony if credited may have been sufficient to make the requisite showing, much of it was controverted and the matter of the credibility of appellants' witnesses was for the trier of facts, in this case the trial judge, who decided the issue contrary to appellants' contentions.

It also seems that appellants' evidence is insufficient to justify a reversal under the holdings of Moon v. Alred, Tex.Civ.App., 277 S.W. 787.

For the reasons stated, the judgment of the trial court is affirmed. Costs are adjudged against appellants. Because of the proximity of the November General Election, we must require that motion for rehearing be filed by 10:30 a. m. October 1, 1952.