Jesse L. CARR, Frank H. Yarnot, John W. Real, James W. Romerdahl, Robert J. Sinnett, Emmitt Wilson, John Forceskie, Darlene Forceskie, Calvin L. Stroble, and Jon Maloney, a group of Individuals known as the New Homesteaders, Petitioners,

v.

Lowell THOMAS, Jr., Lt. Governor of Alaska, Respondent.

No. 4261.

Supreme Court of Alaska.

Nov. 17, 1978.

Fredric R. Dichter, Anchorage, for petitioners.

Richard M. Burnham, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for respondent.

Douglas Pope, Anchorage, for amicus curiae Chancy Croft.

Robert H. Wagstaff, Anchorage, for amicus curiae Jay Hammond.

OPINION

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER and BURKE, Justices, and DIMOND, Senior Justice.

BOOCHEVER, Justice.

Petitioners made application pursuant to AS 15.20.430[1] for a recount of the votes in the primary election held on August 22, 1978. The petitioners seek to have this court review the decision of the Lieutenant Governor, respondent, to count certain bal-

---

1. *Sandvik v. State*, 564 P.2d 20, 25 (Alaska 1977); *Andrews v. State*, 552 P.2d 150, 152 (Alaska 1976).

1. AS 15.20.430(a) specifies:
   A defeated candidate or 10 qualified voters who believe there has been a mistake made

lots cast by challenged voters or as questioned ballots pursuant to AS 15.15.210[2] and AS 15.15.213.[3]

An appeal to this court from the decision of the Lieutenant Governor is authorized by AS 15.20.510.[4] The petition has been filed in accordance with Alaska Appellate Rule 25, which specifies in part:

(a) *Original Applications for Relief.* The granting by this court or a justice thereof on original application of relief heretofore available by writs authorized by law, is not a matter of right but of sound discretion sparingly exercised. The procedure for obtaining such relief shall be as follows:

(1) There must be filed with the court or a justice thereof: [a] such portion of the record and proceedings of the court below as is needed for the purpose of determining whether the relief sought will be granted, and [b] an original and six legible copies of the petition prepared in conformity with Rule 12(b), accompanied by proof of service where service is required by this rule.

(2) The petition shall set forth with particularity why the relief sought is not available in any other court, or cannot be had through appellate processes of appeal or petition for review.

.    .    .    .    .

(8) As soon as practical after the time has expired for filing a memorandum in opposition to an original application, the matter shall be considered by the court, and unless otherwise ordered, without

---

by an election official or by the canvassing board in counting the votes in an election, may file an application within five days after the completion of the state canvass to the lieutenant governor for a recount of the votes from any particular precinct or any election district and for any particular office, proposition, or question. However, the application may be filed only within three days after the completion of the state canvass after the general election for a recount of votes cast for the office of governor and lieutenant governor. If there is a tie vote as provided in AS 15.15.460, the lieutenant governor shall initiate the recount and give notice to the interested parties as provided in § 470 of this chapter.

2.  AS 15.15.210 provides:

*Challenging of voters of suspect qualification.* Every election judge and election clerk shall challenge, and every watcher and other person qualified to vote in the precinct may challenge a person attempting to vote if the challenger has good reason to suspect that the challenged person is not qualified to vote. All challenges shall be made in writing setting out the reason for the challenge. A challenged person before voting shall subscribe to an oath and affidavit provided by the lieutenant governor attesting to the fact that in each particular the person meets all the qualifications of a voter, that he is not disqualified, and that he has not voted at the same election. He shall also state the place from which he came immediately before living in the precinct in which he now offers to vote and the length of time of his residence in the former place. After the challenged person has taken the oath and signed the affidavit, the person may vote. If the challenged person refuses to take the oath or sign the affidavit, the person may not vote.

3.  AS 15.15.213 states:

*Questioning a voter's ballot.* If his polling place is in question a voter shall be allowed to vote, and any election official shall consider the ballot as a questioned ballot.

4.  AS 15.20.510 provides:

*Provision for appeal to courts.* A candidate or any person who requested a recount who has reason to believe an error has been made in the recount (1) involving any question or proposition or the validity of any ballot may appeal to the superior court in accordance with applicable court rules governing appeals in civil matters, and (2) involving candidates for the legislature or Congress or the office of governor and lieutenant governor may appeal to the supreme court in accordance with rules as may be promulgated by the court. Appeal shall be filed within five days of the completion of the recount. Upon order of the court, the lieutenant governor shall furnish the record of the recount taken including all ballots, registers, and other election material and papers pertaining to the election contest. The appeal shall be heard by the court sitting without a jury. The inquiry in the appeal shall extend to the questions whether or not the lieutenant governor has properly determined what ballots, parts of ballots, or marks for candidates on ballots are valid, and to which candidate or division on the question or proposition the vote should be attributed. The court shall enter judgment either setting aside, modifying, or affirming the action of the lieutenant governor on recount.

oral argument. If the court or a justice thereof orders the cause set for argument, the parties will be notified whether additional briefs or memoranda are required, when they must be filed, and how much time has been allotted for oral argument.

. . . . .

We have concluded that it was not illegal, as contrary to the provisions of AS 15.15.-215, to utilize punch cards for questioned ballots and ballots cast by challenged voters and that the Lieutenant Governor did not err in denying the challenge of those ballots as violative of AS 15.15.215.

AS 15.15.215(a) provides:

A challenged voter or one who casts a questioned ballot shall vote his ballot in the same manner as prescribed for other voters except that he shall use a paper ballot. After the election judge removes the identification number from the ballot, the challenged voter shall insert the ballot into a small blank envelope, seal it and put the envelope into a larger envelope on which the oath and affidavit he previously signed is located. After the election judge removes the identification number from the ballot, the voter who casts a questioned ballot shall insert the ballot into a small blank envelope, seal it, and put the envelope into a larger envelope on which the information concerning that voter's residence is located. These larger envelopes shall be sealed and deposited in the ballot box along with their respective attached statements of asserted invalidity. All envelopes shall be counted and compared to the voting list before leaving the place of polling and upon receipt by the official or body supervising the election. When the ballot box is opened, these envelopes shall be segregated and delivered to the official or body supervising the election. The merits of the challenge or question shall be determined by this official or body in accordance with the procedure prescribed for challenged absentee votes in AS 15.-20.210.

It is petitioners' contention that use of punch card ballots violated this provision. Respondent has submitted an affidavit filed by the Director of the Division of Elections indicating that Election Districts 4 (Juneau), 7-12 (Anchorage), and 20 (Fairbanks) utilized punch card voting in the August 22, 1978, primary election; and that questioned voters or persons casting challenged ballots in these districts were allowed to use punch card ballots. After the individual cast his vote, the identification number from the questioned or challenged punch card ballot was removed by the election judge and the voter inserted the ballot into a small envelope. The voter then sealed the envelope and placed it in a larger envelope on which, in the case of a challenged voter, the oath and affidavit previously signed by the voter were set forth. In the case of questioned ballots, information concerning that voter's residence was indicated on the larger envelope.

The larger envelopes were then sealed and deposited in the ballot box along with their respective attached statements of asserted invalidity. When the ballot box was opened, these envelopes were segregated and delivered to the district election supervisor. The merits of any challenges to the ballots were then determined and those found to be valid were counted by computer and the results entered on the statement of vote.

The petitioners assume that a punch card ballot is not a "paper ballot."[5] Punch card ballots, however, are constructed of paper, so that literally they are "paper ballots." We nevertheless will endeavor to determine the intent of the legislature in ascertaining whether AS 15.15.215 was intended to prohibit the use of punch card ballots.

Petitioners and respondent seem to agree that the intent of the legislature in enacting AS 15.15.215 was to keep the questioned and challenged ballots separate and distinct from other votes.

The House Judiciary Committee Report on chapter 120, SLA 1968 (AS 15.15.215 before amendment in 1975) stated:

---

**5.** This assumption was not questioned by respondent.

This bill as amended provides a method to properly validate a ballot of a challenged voter. Under the current law a voter may sign an affidavit that he is an eligible voter and proceed to vote. If at a subsequent time it can be proved that he was not an eligible voter his vote would already have been counted. This bill provides that a challenged voter shall vote much the same as an absentee voter and his ballot, shall be approved by the absentee counters.

House Judiciary Committee Report on House Bill No. 343, 1968 House Journal 474.

In 1975, the section was amended to include "questioned" as well as challenged ballots.[6]

It would appear that the section was of particular importance where voting machines, which are still authorized by statute,[7] are used. Unlike paper ballots, be they in punch card or other form, a machine vote may not be retrieved. A challenged or questioned machine vote could not be segregated for later rejection. It thus is necessary that paper ballots be used by challenged voters and for questioned ballots so

that the votes may either be counted or rejected depending on the later ruling. It is immaterial whether the paper ballot is arranged for punching a hole or marking an "X" to indicate the vote.

Nowhere in Title 15 is the specific distinction made between a "paper ballot" and a "punch card ballot."[8] Throughout the election code a distinction is made between machine and paper ballots.[9] While there appear to be no specific definitions of the terms in question in either Black's Law Dictionary (rev. 4th ed. 1968) or Words and Phrases, Corpus Juris Secundum divides types of ballots into two classes: (1) paper ballots, and (2) voting machine ballots. 29 C.J.S. Elections § 156.[10]

We hold that a punch card ballot is a form of paper ballot under the provisions of AS 15.15.215.

Even if we had concluded that punch card ballots were somehow different from other paper ballots so as to require different treatment under the statute, we would reach the same result. The challenge at issue was made after the election. There is

---

**6.** *See* Ch. 197 § 17, SLA 1975.

**7.** AS 15.20.230 states that, "Voting machines may be used in any election."

**8.** We note, however, that the Alaska Voter Handbook seems to indicate a distinction between a "paper ballot" and a "punch card ballot" when it states in part:

> If you live in Anchorage, Fairbanks or Juneau, you will use a punch card ballot to vote. . . . All other areas of the state use paper ballots.

**9.** AS 15.20.260 pertains to "[p]reparation of *machine ballots*." [emphasis added] It states in part:

> The lieutenant governor shall prescribe (1) the sequence of offices, questions, and propositions as will most nearly conform to the sequence of *paper ballots,* and (2) the order of the names of candidates for the *machine ballots* in each precinct . . . . [emphasis added]

AS 15.20.370 addresses "[p]rocedure on malfunction" of a voting machine. It states in part:

> The board may use any reserve voting machine which the state, city, or borough may have available or may use *paper ballots* to proceed with the voting. [emphasis added]

It seems apparent that "paper ballots" are not the same as ballots used in the machine. AS 15.20.380 refers to the "[c]ounting of votes cast" and provides in part:

> If two or more machines, or if a *machine and paper ballots* were both used in the precinct, the board shall compute the sum of the totals from each. [emphasis added]

Again, the implication is that "machine" ballots are different from "paper" ballots.

**10.** Petitioners assume that the word "paper" in AS 15.15.215 refers to only X-marked paper ballots. Petitioners also contend that the legislative intent of requiring that form of ballot is to keep such ballots separate and distinct from other ballots. We note that the general use of paper ballots is provided for in AS 15.15.030(5), and that in the election at issue, according to the respondent's brief, all voting districts in Alaska except Anchorage, Fairbanks and Juneau used X-marked paper ballots instead of punch card paper ballots. To follow petitioners' logic, assuming the correctness of the above noted facts, leads inevitably to the question of how petitioners' assumed legislative intent is fulfilled where all other voters are also using X-marked paper ballots pursuant to AS 15.15.030(5).

well-established policy which favors upholding of elections when technical errors or irregularities arise in carrying out directory provisions which do not affect the result of an election. *Canales v. City of Alviso,* 3 Cal.3d 118, 89 Cal.Rptr. 601, 474 P.2d 417, 422 (1970). Courts are reluctant to permit a wholesale disfranchisement of qualified electors through no fault of their own, and "[w]here any reasonable construction of the statute can be found which will avoid such a result, the courts should and will favor it." *Reese v. Dempsey,* 48 N.M. 485, 153 P.2d 127, 132 (1944).[11]

In determining whether an election provision is to be regarded as mandatory or directory, great emphasis is placed on whether the challenge is prior or subsequent to the election.

> It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in a full and fair expression of the public will, and, from the current of authority, the following may be stated as the approved rule: All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to affect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.[12]

AS 15.15.215 does not provide that failure to vote on paper ballots other than punch card type renders the election void. True, the statute does use the word "shall" rather than "may," but many election cases regard the word "shall" as directory in post-election cases and failure to follow strictly such requirements does not result in ballots being declared invalid.[13]

Even where statutory terms have been construed as mandatory, it has been held that the right to vote is a superseding mandate.

> We must thus appraise mandate as against mandate, if there be a conflict. Certainly, the more controlling one is that the voter shall, ordinarily, have his vote recognized and the candidate be given the office to which he is elected if the votes are cast and returned under such circumstances that it can be said it represents the voice of the majority of the voters participating. And "the election will not be disturbed by reason of technical irregularities in the manner of conducting it or of making the returns thereof . . . .".

*Valdez v. Herrera,* 48 N.M. 45, 145 P.2d 864, 870 (1944).

As stated in *Sanchez v. Bravo,* 251 S.W.2d 935 (Tex.Civ.App.1952), cited by respondent:

> The right of the citizen to cast his ballot and thus participate in the selection of those who control his government is one of the fundamental prerogatives of citizenship and should not be impaired or destroyed by strained statutory constructions. If in the interests of the purity of the ballot the vote of one not morally at

---

11. "In the absence of fraud, election statutes generally will be liberally construed to guarantee to the elector an opportunity to freely cast his ballot, to prevent his disfranchisement, and to uphold the will of the electorate." *Brown v. Grzeskowiak,* 230 Ind. 110, 101 N.E.2d 639, 646 (1951), *citing, inter alia, Dobbyn v. Rogers,* 225 Ind. 525, 76 N.E.2d 570, 582 (1948); *State ex rel. Harry v. Ice,* 207 Ind. 65, 191 N.E. 155, 157 (1934); *Blue v. Allee,* 184 Ind. 302, 111 N.E. 185, 186 (1916); *Jones v. State ex rel. Wilson,* 153 Ind. 440, 55 N.E. 229, 233 (1899); *Duncan v. Shenk,* 109 Ind. 26, 9 N.E. 690, 692 (1887).

12. *Rich v. Walker,* 237 Ark. 586, 374 S.W.2d 476, 478 (1964), *quoting Henderson v. Gladish,* 198 Ark. 217, 128 S.W.2d 257, 264 (1939).

13. *Mittelstadt v. Bender,* 210 N.W.2d 89, 93–95 (N.D.1973); *Sanchez v. Bravo,* 251 S.W.2d 935, 938 (Tex.Civ.App.1952); *Anderson v. Budzien,* 12 Wis.2d 530, 107 N.W.2d 496, 499 (1961). *See Thomas v. Groebl,* 147 Tex. 70, 212 S.W.2d 625, 630–31 (1948), for discussion of mandatory versus directory construction of election statutes using the word "shall."

fault is to be declared invalid, the Legislature must say so in clear and unmistakable terms.

*Id.* at 938. As we have previously indicated, the legislature has not indicated that failure to comply strictly with AS 15.15.215 should cause ballots to be invalidated.

Other arguments presented by petitioners are not persuasive. We affirm the decision of the Lieutenant Governor to count certain questioned ballots and ballots on challenged voters which were cast by means of punch cards.

The petition for review is granted and the decision of the Lieutenant Governor is AFFIRMED.