**Sharon Marie CISSNA, Petitioner,**

v.

**Sandra L. STOUT, Director, Division of Elections, Respondent,**

**and**

**Ann Spohnholz, Intervenor.**

No. S–7820.

Supreme Court of Alaska.

Nov. 8, 1996.

Rehearing Denied Dec. 5, 1996.

---

Max F. Gruenberg, Jr., Gruenberg & Clover, Anchorage, for Petitioner.

James L. Baldwin, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Jonathan B. Rubini and Thomas A. Amodio, Rubini and Reeves, Anchorage, for Intervenor.

Before COMPTON, C.J., and RABINOWITZ, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. INTRODUCTION

Sharon Cissna petitioned this court for a recount of the primary election vote for the Democratic Party nomination for State Representative for Election District 21. The Director of the Division of Elections (Director) certified that Ann Spohnholz, Cissna's opponent, won the primary election by one vote. We affirm the decision of the Director.[1]

## II. FACTS AND PROCEEDINGS

This is a recount appeal brought pursuant to AS 15.20.510(2).[2] A recount appeal is a

---

1. This Opinion follows this court's Order, issued on October 3, 1996, affirming the Director's decision. This Opinion explains the basis for that Order.

2. AS 15.20.510 provides:
 A candidate or any person who requested a recount who has reason to believe an error has been made in the recount ... (2) involving

direct review by this court of the recount decision.[3] Cissna seeks a recount of four votes cast by absentee ballot and a review of the decision to deny one person the opportunity to vote. She bases her claims on three separate grounds. The relevant facts are not disputed.

First, Cissna argues that the Division of Elections erred in refusing to count three votes of persons who voted in, but did not reside in Election District 21. Cissna maintains that statutory authority permits these voters to cast ballots in the district where they previously resided.

The votes at issue were cast by Debra Huling, Karen Adams, and Gregory Nothstine. All three persons once resided and were registered in District 21, but moved into other voting districts months before the primary election. Although none are residents of District 21, all three voted by absentee ballot in the District 21 primary election. None had reregistered in a new district before voting.

When Adams and Nothstine cast their absentee ballots on August 27, 1996, they each signed the Absentee In Person Ballot Oath and Affidavit Envelope. Each completed the oath and affidavit form, on which each listed an address at a physical location outside District 21 under the box asking for "Alaska Residence Address." The form describes the resident address as "Where You Live (DO NOT use PO, PSC, or RR Box)." It provides another space for a mailing address, which Adams and Nothstine identified as the same as their residence address. Huling signed an Absentee In Person Ballot Oath and Affidavit Envelope on August 20. On that envelope she gave an address within District 21 for both her Alaska Residence and her mailing address; however, that day she reregistered to a different voting district.[4]

The votes of Adams, Nothstine, and Huling for State Representative for District 21 were not counted based on the Director's determination that each resided outside District 21. Their votes for statewide races were counted.

Second, Cissna contests the rejection of Richard Snyder's ballot. Snyder voted and sent his ballot to the Division of Elections two days after the election. Snyder, who was temporarily staying in Wisconsin, timely applied to vote by absentee ballot in July. On August 22, upon learning that the Division had no record of his ballot application, Snyder faxed the Division all information necessary for the application. The Division sent the ballot to Snyder by first class mail on August 23. Snyder did not receive the ballot until August 28, the day following the election. On August 29, he voted, had his vote witnessed by two persons, and sent the ballot to the Division.

---

candidates for the legislature or Congress or the office of governor and lieutenant governor may appeal to the supreme court in accordance with rules as may be adopted by the court. Appeal shall be filed within five days of the completion of the recount. Upon order of the court, the director shall furnish the record of the recount taken, including all ballots, registers, and other election material and papers pertaining to the election contest. The appeal shall be heard by the court sitting without a jury. The inquiry in the appeal shall extend to the questions whether or not the director has properly determined what ballots, parts of ballots, or marks for candidates on ballots are valid, and to which candidate or division on the question or proposition the vote should be attributed. The court shall enter judgment either setting aside, modifying, or affirming the action of the director on recount.

3. The recount appeal comes before this court on an expedited basis. By statute, the Director must distribute ballots and other election materi-al to local election boards 25 days before the general election. AS 05.15.050. The general election for State Representative for House District 21 is scheduled for November 5, 1996. We granted the Director's motion for an expedited hearing, and for a ruling by October 11, 1996, to enable the Division to meet the statutory deadline.

4. In Cissna's First Statement of Objections, she submitted the affidavits of Adams and Nothstine stating that they also reregistered to their current address at the same time, or just after, casting their ballot. At oral argument, counsel for petitioner stated that Adams and Nothstine were mistaken in their belief that they had reregistered to their new addresses the day they cast their ballots. However, Cissna presented no evidence to the court contradicting the affidavits. As this factual dispute does not affect our analysis, we do not need to address it further.

Snyder's ballot was not counted. Cissna makes two arguments to support her claim that Snyder's ballot was improperly rejected. First, she argues that the absence of voter number, social security number, and birth date do not render it invalid because the ballot was sufficiently identified by Snyder's signature. Second, she argues the ballot should not have been rejected as untimely, since election officials were at fault in not getting the ballot to Snyder in a timely manner.[5]

Cissna's third claim is based on the decision by election officials not to allow Stephanie Butler to vote. Cissna claims that election officials denied Butler the opportunity to vote on the ground that Butler's name was not listed on the "official registered list" and Butler arrived at the polls after they closed.[6]

Cissna requested a recount of the election results on these three grounds, pursuant to AS 15.20.430.[7] The Director reviewed and certified a recount of the Election District 21 primary election, as authorized by AS 15.20.480.[8]

## III. DISCUSSION

### A. Standard of Review

 This case involves statutory and constitutional interpretation. It does not re-

---

5. Cissna contends that the Division advanced both untimeliness and insufficient identification as bases for their refusal to count Snyder's ballot.

6. A factual dispute exists as to whether Butler arrived at the polls just prior to or after their closing time of 8:00 p.m. Again, this dispute is not relevant to our determination, as Butler's time of arrival at the polls does not affect our ruling. *See infra* at n. 18.

7. AS 15.20.430 authorizes applications for recount "to the director" of the Division. AS 15.20.430(a) provides in part:

> A defeated candidate or 10 qualified voters who believe there has been a mistake made by an election official or by the counting board in counting the votes in an election, may file an application within five days after the completion of the state review to the director for a recount of the votes from any particular precinct or any election district and for any particular office, proposition, or question.

8. AS 15.20.480 provides in part:

quire that we resolve any factual dispute. We exercise independent judgment when interpreting statutes which do not implicate an agency's special expertise or determination of fundamental policies. *Keane v. Local Boundary Comm'n,* 893 P.2d 1239, 1241 (Alaska 1995). Similarly, we apply our independent judgment to constitutional issues, adopting "a reasonable practical interpretation in accordance with common sense" based upon "the plain meaning and purpose of the provision and the intent of the framers." *Arco Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992) (citing *Kochutin v. State,* 739 P.2d 170, 171 (Alaska 1987)).

### B. The Scope of a Recount Appeal

 Election results may be considered by a court pursuant to the recount appeal provision, AS 15.20.510, and the election contest provision, AS 15.20.540.[9] This court has direct appellate jurisdiction to review recount decisions specified in AS 15.20.510. By contrast, election contests are filed in the superior court, and are heard by this court only upon review of the superior court's decision. *Willis v. Thomas,* 600 P.2d 1079, 1081 (Alaska 1979). The proceedings also are substantively distinct. An election contest requires a showing of malconduct, fraud or corruption of election officials, ineligibility of a candi-

---

> In conducting the recount, the director shall review all ballots whether the ballots were counted at the precinct or by computer or by the district absentee counting board or the questioned ballot counting board to determine which ballots, or parts of ballots, were properly marked and which ballots are to be counted in the recount, and shall check the accuracy of the original count, the precinct certificate and the review.

9. AS 15.20.540 provides:

> A defeated candidate or 10 qualified voters may contest the nomination or election of any person or the approval or rejection of any question or proposition upon one or more of the following grounds: (1) malconduct, fraud, or corruption on the part of an election official sufficient to change the result of the election; (2) when the person certified as elected or nominated is not qualified as required by law; (3) any corrupt practice as defined by law sufficient to change the results of the election.

An election contest is brought in the superior court within ten days after completion of state review. AS 15.20.550.

date, or a corrupt practice sufficient to change an election result. We do not consider these issues in a recount appeal.[10] No judgment of the superior court has been appealed to this court; election contest issues are not properly before us at this time.

The inquiry in a recount appeal is whether specific votes or classes of votes were correctly counted or rejected. *Id.* Issues this court has considered on recount appeals include the validity of punch cards and a variety of marks on ballots, the proper procedures for absentee voting and consequences for failure to follow those procedures, and registration requirements. *See Finkelstein v. Stout,* 774 P.2d 786 (Alaska 1989) (residency, registration, absentee ballots); *Fischer v. Stout,* 741 P.2d 217 (Alaska 1987) (punch card ballots, residency, registration, absentee votes); *Hickel v. Thomas,* 588 P.2d 273 (Alaska 1978) (marks in boxes, punch card ballots); *Willis,* 600 P.2d 1079 (registration, absentee votes); *Carr v. Thomas,* 586 P.2d 622 (Alaska 1978) (punch card ballots).[11]

While recount appeals involve the counting or rejection of votes, they are not limited to determining the facial validity of the ballots. *Willis,* 600 P.2d at 1082. In *Willis,* this court reasoned that a proper review of the Director's recount decision, made pursuant to procedures set forth in AS 15.20.480, required that this court "have the power to search underlying records and election materials to ensure that a vote was cast in compliance with the requirements of Alaska's election laws." *Id.* The search includes an inquiry into such issues as whether a voter was properly registered or was a resident of the district in which he or she voted. *Id.*

### C. *Rejection of the Votes of Prior District 21 Residents*

Voters in state and local elections must be residents of the election district in which they vote. Alaska Const. art. V, § 1;[12] AS 15.05.010(4).[13] Despite these constitutional and statutory requirements that a voter reside in the election district in which he or she seeks to vote for thirty days "immediately" or "just" preceding the election, *id.,* Cissna argues that the votes of non-residents of District 21, Adams, Nothstine, and Huling, should be counted in the District 21 primary election. In support of this argument, Cissna relies on AS 15.20.015 and AS 15.05.020(10).

Alaska Statute 15.05.020 sets forth the procedures for determining the residence of a voter. It provides in part:

(1) A person may not be considered to have gained a residence solely by reason of presence nor may a person lose it solely by reason of absence . . .

(2) The residence of a person is that place in which the person's habitation is fixed, and to which, whenever absent, the person has the intention to return. . . .

(3) A change of residence is made only by the act of removal joined with the intent to remain in another place. There can only be one residence.

. . . .

10. Prior cases may have blurred the line between issues appropriately considered in a recount appeal and in election contests. In large part any confusion results from the consolidation of recount appeals and election contests for review. We now clarify that issues of malconduct as contemplated in AS 15.20.540 are not properly raised on recount appeal.

11. These are the only Alaska cases to review recount decisions.

. 12. Article V, section 1 of the Alaska Constitution provides in part:
Every citizen of the United States who is at least eighteen years of age, who meets registration residency requirements which may be prescribed by law, and who is qualified to vote under this article, may vote in any state or local election. A voter shall have been, immediately preceding the election, a thirty day resident of the election district in which he seeks to vote.

13. AS 15.05.010 sets forth voter qualifications:
A person may vote at any election who
(1) is a citizen of the United States;
(2) is 18 years of age or older;
(3) [Repealed]
(4) has been a resident of the state and of the election district in which the person seeks to vote for at least 30 days just before the election; and
(5) [Repealed]
(6) has registered before the election as required under AS 15.07 and is not registered to vote in another jurisdiction.

(5) A person does not gain residence in any place to which the person comes without the present intention to establish a permanent dwelling at that place.

. . . .

(8) The term of residence is computed by including the day on which the person's residence begins and excluding the day of election.

. . . .

(10) The address of a voter as it appears on an official voter registration card is presumptive evidence of the person's voting residence. This presumption is negated only by the voter notifying the director in writing of a change of voting residence.

Cissna argues that AS 15.05.020(10) requires that when a voter has not reregistered before voting, the address where he or she is registered to vote constitutes legal residency for voting purposes. Thus despite moving from District 21 months before the primary election, Adams, Nothstine, and Huling were entitled to vote as residents of District 21 because they had not yet filled out a voter registration card with a change of address to the new location where each lived. In support of this claim, Cissna relies on a 1982 Attorney General's Opinion which concludes that once a voter has registered in one district, "the only evidence of intent to establish a new residence is reregistration." 1982 Formal Op. Att'y Gen. 7.

▌ As a preliminary matter, we are not bound to follow positions stated in an Attorney General's Opinion. While opinions of the attorney general are entitled to some defer-

ence, they are not controlling on matters of statutory interpretation. *Carney v. State Bd. of Fisheries of Alaska,* 785 P.2d 544, 548 (Alaska 1990).

Alaska Statute 15.20.015 allows certain persons to vote in the district where they previously resided. It provides:

A person who meets all voter qualifications except that listed in AS 15.05.010(4) is qualified to vote by absentee ballot in the election district in which the person formerly resided if the person lived in that election district for at least 30 days immediately before changing residence.

Cissna reads this language to allow any person who moves from a residence where that person lived for at least thirty days to vote as though he or she still resided in that district, irrespective of when that person moved. She supports this claim with the same Attorney General's Opinion, which concludes that a non-resident may vote in the district where he or she was previously registered, when that person either has reregistered within thirty days of the election, or has "residency" or "domicile" in a new district, but is properly registered in his or her old district.[14] 1982 Formal Op. Att'y Gen. 7.

Petitioner's interpretation of both statutes would permit a person to vote at a prior residence so long as that person had never reregistered to vote by signing a voting registration card listing a new residence. By this reasoning, it would not matter when the individual moved. Taken to its logical extreme, Cissna's interpretation allows someone who lived in a district for two months,

---

14. The Attorney General's Opinion states:

The question arises, then, as to whether a person properly registered in one district who then claims 'residency' or 'domicile' in a new district—but seeks to reregister less than 30 days before an election—can claim prior existing residency and meet the constitutional and statutory requirements of 30–day residency. Such an interpretation, we believe, would be irreconcilable both with the comprehensive scheme of regulation otherwise established in the code, and with the purposes of the 30–day requirement itself. With respect to all other forms of registration and reregistration, the 30–day residency and registration requirements are coextensive, and we can divine no rational reason for creating an exception for a person seeking to reregister in a new district

less than 30 days before an election. Additionally, such a construction would require the state to enmesh itself in the subjective intent which the voter held before the date of registration and would require the state to reopen the registration process with respect to the election at issue less than 30 days prior to the election date.

. . . .

A voter 'resides' in the district where he is registered. If a person has 'moved' to another district, but has not reregistered, he may continue to vote a full absentee ballot (or in person) in his district of registration, irrespective of the time period which has elapsed, or what others may think of his subjective intention. 1982 Formal Op. Att'y Gen. 7.

but moved from that district to a permanent residence in another district twenty years ago, to vote in the election district in which he or she resided two decades earlier. Such an interpretation contradicts Article V, section 1 of the Alaska Constitution and would render meaningless the residency requirements set forth in AS 15.05.010.

Alaska Statutes 15.05.010 and 15.20.015 should be read in conjunction. Together, they protect the voter who has recently moved away from one district but has not resided in a new district for thirty days and cannot satisfy Alaska constitutional voting requirements under Article V, section 1. Under AS 15.20.015, that person can vote in the district in which he or she resided immediately prior to moving. Without such a provision, the voter would be denied his or her right to vote. However, a non-resident can vote *only* in the case where the requirement of a thirty day residency in the new district is not met. When that residency window is met, the voter should reregister in his or her new district. If the voter fails to do so, he or she risks having any ballot cast in the old district partially rejected as to the local district vote.

■ As a practical matter, certain persons who move to a new district, but do not reregister or notify the election officials in writing of a change in residency, may have their votes counted in the district of their prior residency simply because election officials do not know that their residency has changed. In the interest of administrative efficiency, AS 15.05.020(10) allows the election official, in the absence of any written notification of change in residency, to presume that a voter still is a legal resident of the district in which he or she is registered. The statute is limited, however, to the circumstance where the officials have no notification of a move to another district. Attorney General's Opinion No. 7 accounts for this limited circumstance. Any broader reading would eviscerate the voter qualification requirements set forth in Article V, section 1 and AS 15.05.010. Thus, when election officials have written notice of a change in residency, this notice suffices to rebut the presumption of voter residency at the district where that voter previously registered.

In *Fischer* this court considered a registration issue similar to that raised by Cissna. Thirteen voters submitted absentee ballots for a District H candidate but listed on the absentee ballot envelope a voting residence outside the district in which they voted. *Fischer*, 741 P.2d at 222. Alaska Statute 15.20.030 requires that absentee ballots be returned in an envelope, with the voter's certificate swearing under oath that the voter is a qualified voter "in all respects." The ballot envelope in *Fischer* included a space for the absentee voter to fill in his or her permanent residence. *Id.* This court concluded that the residency form on the envelope satisfied the rebuttal requirement under AS 15.05.020(10) of "an affidavit on a form prepared by the director setting out the new voting residence," and because the residency listed by the voters was outside the district in which they voted, the votes were to be excluded. *Id.*

■ Similarly, in the present case Adams and Nothstine filled out an oath on the back of the ballot envelope, claiming residency outside the district in which they voted. Following the reasoning in *Fischer*, the Director correctly found both to be registered in a district other than District 21.

Unlike Adams and Nothstine, Huling stated by affidavit on her absentee ballot that she resided in District 21. However, that day she reregistered at another address, which is in District 22. The registration application is a voter certification submitted to the Division of Elections; the application carries the warning that any person providing false information on the voter certification may be convicted of a misdemeanor. This certification was received before the votes were counted and recounted, and is substantively identical to the certification of residency on the back of the ballot. As it serves the same function as the certification of residency on the back of the ballot, the registration form rebuts the presumption that Huling legally resides in District 21, and establishes her legal residency in District 22.

The next consideration is whether, despite being residents of another district, the votes

of Adams, Nothstine, and Huling should be counted. Alaska Statute 15.20.211 sets forth the instances where cross-district voting is permitted. Alaska Statute 15.20.211 provides in part:

> (a) If a qualified voter of the state votes a ballot for an election district other than the election district in which the voter is registered, the votes cast for statewide candidates and for statewide ballot propositions and statewide questions shall be counted. If the qualified voter voted for a candidate for the state senate from the senate district in which the voter is a resident, the vote shall be counted. The votes cast for candidates or ballot propositions or questions not appearing on the ballot of the district in which the voter is a resident may not be counted.

The declarations on the back of the ballot envelope establish that Adams and Nothstine rebutted the presumption of their residency in District 21, and established their residency in another voting district. By reregistering to vote at her new address, Huling also established her residency outside District 21. Therefore, the votes of non-residents, who certified in writing to election officials that they no longer resided in District 21, were properly rejected as to the primary election for State Representative for Election District 21.

### D. *Rejection of Richard Snyder's Vote*

An absentee ballot will not be counted if the ballot is not postmarked on or before the date of election. AS 15.20.203; AS 15.20.081(e). It is undisputed that Snyder's absentee ballot was postmarked on August 29, 1996, two days after the primary election, and was witnessed one day after the election.

Cissna maintains that Snyder's vote should be counted nonetheless, because his failure to submit a timely ballot was the fault of election officials. She relies on *Fischer* for the proposition that when a voting error is made entirely by election officials, the vote will be counted, even if it does not meet required statutory procedures. *Fischer* does not address the situation presented in this case. In *Fischer* the issue was whether a questioned ballot should be counted in the election results; there is no indication in *Fischer* that the voter cast the questioned ballot at any time after the election deadline. *See Fischer*, 741 P.2d at 217–18.

 It is not contested that Snyder made a good faith effort to vote. Election officials may have misplaced his first application. Upon receipt of his second ballot application, election officials sent Snyder a ballot by first class mail on August 23, 1996, creating a risk that Snyder would not receive the ballot by August 27. Nonetheless, timely receipt was possible and did occur in other cases involving comparable distances.[15] Even assuming that election officials were negligent and were at fault for Snyder's late receipt of the ballot, Snyder's ballot was properly rejected as untimely. Public policy requires that votes cast after polls close not be counted.[16] Knowledge of even unofficial election results may affect a person's vote. This is particularly true in a case such as this where a candidate's loss by one vote is highly publicized. To allow otherwise could erode the integrity of the entire voting process.[17]

---

**15.** The affidavit of Division of Elections official, Gail Fenumaia, established that ballots sent on August 23 and 24 to Washington D.C., Pinole, California, Randolph Air Force Base and Kemper, Texas, Roy and Clarfield, Idaho, as well as several addresses in Washington State and Alaska, among others, were received, voted, and returned to the Division in a timely manner.

**16.** AS 15.20.081(c) requires that the Director send absentee ballots "by the most expeditious mail service." Cissna argues that sending the ballot by first class mail four days before the election amounts to a violation of this statute. We do not agree that AS 15.20.081(c) requires election officials to fax or send by overnight mail a ballot when an application is received a short time before an election is scheduled. To require otherwise would unduly burden the Division as to both time and money. Even if AS 15.20.081(c) had been violated, acceptance of a late ballot is not an appropriate remedy.

**17.** As this court finds that Snyder's vote was properly rejected as untimely, it does not consider whether the ballot contained proper identification. We note, however, that Stout agrees with Cissna that Snyder's signature provided sufficient identification.

### E. *Refusal to Allow Butler to Vote*

Cissna argues that election officials improperly prevented Stephanie Butler from voting. The reason or reasons for denying Ms. Butler the opportunity to vote are irrelevant to our resolution of the ballot recount. Because she never cast a ballot, no ballot can be counted or rejected, as contemplated in AS 15.20.510.[18] The Butler claim is not now justiciable before this court.

### IV. CONCLUSION

The certification by the Director is AFFIRMED.[19]

---

18. Cissna has filed an election contest in superior court, alleging that election officials improperly barred Stephanie Butler from voting. The superior court is the proper forum for this misconduct claim.

19. As with our October 3, 1996 Order in this case, nothing contained in this Opinion should be construed as affecting legal proceedings presently pending in the Superior Court for the Third Judicial District at Anchorage arising out of the Election District 21 primary election, specifically a civil suit filed by Stephanie Butler and Rex Butler (3AN–96–7635) and an election contest filed by Cissna (3AN–96–7595).