BOLGER, Chief Justice.
*161 I. INTRODUCTION
This recount appeal arises from the 2018 Alaska House of Representatives race in District 1. Following a recount the election was certified, with Kathryn Dodge receiving 2,662 votes and Barton LeBon receiving 2,663. Dodge filed this recount appeal pursuant to AS 15.20.510. On January 4, 2019, we issued an order affirming the recount decision and indicated that this opinion would follow.
II. FACTS AND PROCEEDINGS
In the November 6, 2018 general election, Dodge and LeBon ran for the House District 1 seat in the Alaska House of Representatives. On November 26 the State Division of Elections (the Division) certified the election result as a tie, with each candidate receiving 2,661 votes.[1] The tie triggered an automatic recount.[2] The recount was held on November 30, and representatives of each candidate and political party had the opportunity to observe and challenge the Division's vote-counting decisions. The Division counted two additional votes for LeBon and one additional vote for Dodge; the State Elections Director (the Director) certified LeBon as the winner by one vote.[3]
During the recount on November 30, Dodge challenged four ballots. She argued that one ballot, excluded as "overvoted" because it contained markings in more than one oval, should have been counted for her; that two counted ballots should have been excluded because they had been cast by individuals who were not residents of the district; and that one ballot, excluded due to the voter's registration in another district, should have been counted because the voter's registration in the other district was inadvertent. LeBon challenged the same overvoted ballot as Dodge, but he argued it should have been included as a vote for him. LeBon also challenged five additional ballots. The Director maintained her original vote-counting decisions in the face of these nine challenges.
On December 5 Dodge filed this recount appeal challenging the Director's recount decisions on the four ballots Dodge had challenged.[4] LeBon and the Alaska Republican Party filed a motion to intervene on December 7 and then cross-appealed on December 10, requesting review of the six ballots LeBon had challenged. We appointed Superior Court Judge Eric A. Aarseth to serve as a special master to conduct hearings and other proceedings as necessary to make a report with recommended findings of fact and conclusions of law.[5] Judge Aarseth held an evidentiary hearing on December 20 and issued his recommendation report on December 21. He recommended that "all decisions of the *162 Director in conducting the recount for House District 1 be upheld." The parties then filed briefing with objections to Judge Aarseth's report and responses to the objections.
III. STANDARD OF REVIEW
This case does not present any factual disputes but instead involves only statutory interpretation. "We exercise independent judgment when interpreting statutes which do not implicate an agency's special expertise or determination of fundamental policies," such as the election statutes at issue here.[6] "[W]e adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[7]
IV. DISCUSSION
A. Record Considered On Recount Appeal
One preliminary issue in this appeal is whether we may consider only the record developed during the recount or if we may also consider new evidence introduced by the parties during this appeal. Dodge argues that we should consider evidence submitted after the conclusion of the recount. In response the State argues that the record should be limited to the materials available to the Director at the time of the recount. We need not determine the scope of the evidence we may consider in a recount appeal, however, for we would affirm the Director's recount decision even if we considered the evidence admitted at the hearing.[8]
B. The Over-Marked Ballot
Alaska Statute 15.15.360 provides the rules that govern how the Division counts ballots. A voter is limited to marking a ballot "only by filling in, making 'X' marks, diagonal, horizontal, or vertical marks, solid marks, stars, circles, asterisks, checks, or plus signs that are clearly spaced in the oval opposite the name of the candidate."[9] Alaska Statute 15.15.360(a)(4) additionally states that "[i]f a voter marks more names than there are persons to be elected to the office, the votes for candidates for that office may not be counted." And AS 15.15.360(b) provides that "[t]he rules set out in this section are mandatory and there are no exceptions to them. A ballot may not be counted unless marked in compliance with these rules." Nonetheless we have emphasized that "the crucial question in determining the validity of ballot markings is one of voter intent."[10]
Dodge challenges the exclusion of a ballot that is marked with filled-in ovals for both LeBon and Dodge, but also an X over the oval for LeBon. Dodge argues it is more probable that the X was intended to cancel the mark for LeBon than the X was intended to emphasize it. But the voter's intent is not clear since both the X and filled-in oval are valid marks for selecting a candidate, and the voter used valid marks in the ovals for each candidate. Thus the ballot has been over-marked, and we agree with the Director's decision not to count this ballot.
C. Ballots Challenged Based On The Voter's Registration
Under the Alaska Constitution, "[v]oters in state and local elections must be residents of the election district in which they vote."[11] Residence is defined by statute as "that place in which the person's habitation is fixed, and to which, whenever absent, the person has the intention to return."[12] The legislature has created a presumption of residency under AS 15.05.020(8) : "The address of a voter as it appears on the official voter registration record is presumptive evidence of the person's *163 voting residence. This presumption is negated only if the voter notifies the [D]irector in writing of a change in voting residence."
1. Norma Knapp's registration
Norma Knapp has been registered to vote in House District 1 since 2010. Before the recount Dodge presented evidence that Knapp's address appeared to be for a car repair business and not a residence, and at the hearing before the special master, Dodge testified over objection that an employee at the business told her Knapp resides in New Mexico. Dodge argues that this evidence demonstrates that Knapp is not a valid resident of the district where she voted, and thus her vote should not have been counted. But AS 15.05.020 explicitly provides that the address on the official voter registration record must be presumed valid unless the voter provides written notice of a change of address. And we have liberally construed a voter's residence.[13] We therefore agree with the Director's decision to count this ballot based on the presumptive validity of Knapp's registration.
2. David Odom's registration
David Odom has been registered to vote in House District 1 since 2004. Before the recount Dodge presented evidence that Odom's registered address appeared to be for an office in an industrial park, not a residence. At the hearing before the special master, Dodge filed an affidavit from Odom stating that he did not reside in House District 1 before the election. The special master ruled that this affidavit was inadmissible hearsay.[14] Odom did not testify at the hearing.
Dodge does not challenge the special master's hearsay ruling in her briefing of objections to the master's decision. Rather she argues that the hearing was an administrative proceeding, in which the rules of evidence do not apply. But Alaska Evidence Rule 101 states that the evidence rules apply in all proceedings in the courts unless explicitly provided otherwise. We therefore agree with the master's decision that Odom's affidavit was inadmissible. And we agree with the Director's recount decision based on the presumptive validity of Odom's registration.
3. Robert Beconovich's registration
In November 2016 Alaska voters approved the permanent fund dividend automatic voter registration ballot initiative.[15] The initiative amended AS 15.07.070 so that the Division may use a permanent fund dividend (PFD) application to complete a voter's registration. If an individual submits a PFD application using an address different from that of his or her voter registration, the statute requires the Division to mail the voter a notice that allows the voter to decline to be registered, maintain his or her existing voter registration, or register to vote at a different address.[16] Failure to respond to this notice requires the Division to register the voter using the address provided in the PFD application.[17]
Before 2017 Robert Beconovich was registered to vote in House District 1. But in his 2017 and 2018 PFD applications, Beconovich provided his work address, which was outside District 1. The Division updated his registration using this new address. So when Beconovich reported to the polling station, he filled out a questioned ballot for the District 1 race. The Director refused to count Beconovich's questioned ballot because he was not registered to vote in House District 1 at the time of the election. At the hearing before the special master, Beconovich testified that he had not intended to change his voting registration and that he did not recall receiving a notice from the Division allowing him to decline this update.
*164 Dodge argues that the initiative only requires registration of PFD applicants who have not been registered before. But language within the initiative clearly expresses an intent to make it easier for a voter to update a registration. The initiative's findings note that "PFD applicants who ... wish ... to update their voter registration[ ] must submit information to the State a second time, ... and the State can use PFD-application data to ensure voter-registration data are current." The statute this initiative amended also recognizes that PFD application information should be used to update a registration. Alaska Statute 15.07.070(k)(1)(B) requires the Division to send a notice to "each applicant not already registered to vote at the address provided" in the PFD application, detailing how a voter can "maintain an existing voter registration ... at a valid place of residence." Thus the initiative's requirements apply to both unregistered and currently registered individuals.
Dodge also argues that Beconovich's PFD application could not have changed his voting registration. She points out that even though an applicant verifies that he or she will be registered to vote at the "residential address" provided, the application itself only asks for a "physical address," not a "residential address." She also relies on the fact that Beconovich did not recall receiving an opt-out notice. In response the State relies on the language of AS 15.07.070 which requires the Division to update a voter's registration based on his or her PFD application.
In Willis v. Thomas , we affirmed the Director's decision not to count questioned ballots from voters whose registrations were purged after notice, pursuant to a statutory scheme.[18] The Division's decision to change Beconovich's registration was based on a similar statutory scheme. Both require the Director to send a notice to the voter that his or her registration may be changed.[19] And in both the Director must change the registration if no response is given to the notice.[20] In light of this precedent and our presumption that agency officials have faithfully performed their duties,[21] we agree that Beconovich's registration was properly updated based on his PFD applications. We therefore affirm the Director's decision not to count Beconovich's questioned ballot for the House District 1 race.[22]
D. LeBon's Additional Challenges
LeBon raises a number of issues with respect to other ballots. He argues that we should affirm the Director's decision based on these challenges because they offset any votes that Dodge's challenges could generate. But since we agree with the Director's decisions to deny Dodge's challenges, we are not required to consider whether LeBon's challenges would generate any additional votes for him.
V. CONCLUSION
We AFFIRM the Director's decision certifying the election for the office of State Representative District 1.

See Press Release, Alaska Div. of Elections, Election Officials Certify House District 1 Race as a Tie (Nov. 26, 2018), http://www.elections.alaska.gov/doc/info/HD1RaceIsTie.pdf.

AS 15.15.460 provides: "If two or more candidates tie in having the highest number of votes ... [t]he director shall immediately proceed with the recount of votes ...."

See Election Summary, Alaska Div. of Elections, Official Recount Results (Nov. 30, 2018), http://www.elections.alaska.gov/results/18GENR/data/results1rc.pdf; Press Release, Alaska Div. of Elections, House District 1 Candidate Barton LeBon Prevails By One Vote During Recount (Nov. 30, 2018), http://www.elections.alaska.gov/doc/info/HD1RecountResults.pdf.

See AS 15.20.510.

We are grateful to Judge Aarseth for his careful consideration of the issues presented and the timely preparation of his report.

Cissna v. Stout , 931 P.2d 363, 366 (Alaska 1996).

Edgmon v. State, Office of Lieutenant Governor, Div. of Elections , 152 P.3d 1154, 1156 (Alaska 2007) (quoting Guin v. Ha , 591 P.2d 1281, 1284 n.6 (Alaska 1979) ).

See infra subsections IV.C.2 and IV.C.3.

AS 15.15.360(a)(1).

Willis v. Thomas , 600 P.2d 1079, 1085 (Alaska 1979).

Fischer v. Stout , 741 P.2d 217, 221 (Alaska 1987) (citing Alaska Const. art. V, § 1 ; AS 15.05.010(4) ).

AS 15.05.020(2).

Fischer , 741 P.2d at 221 ("A residence need only be some specific locale within the district at which habitation can be specifically fixed. Thus, a hotel, shelter for the homeless, or even a park bench will be sufficient.").

See Alaska R. Evid. 802 -804.

See Initiative Petition List, Alaska Div. of Elections , http://www.elections.alaska.gov/Core/initiativepetitionlist.php#15pfvr (last visited June 17, 2019) (describing the initiative and results under the petition ID "15PFVR").

AS 15.07.070(k).

AS 15.07.070(l ).

600 P.2d 1079, 1084 (Alaska 1979).

Compare AS 15.07.070(k), with AS 15.07.130(b).

Compare AS 15.07.070(l ), with AS 15.07.130(b).

See Wright v. State , 501 P.2d 1360, 1372 (Alaska 1972) ("Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties." (quoting Gallego v. United States , 276 F.2d 914, 917 (9th Cir. 1960) )); see also Finkelstein v. Stout , 774 P.2d 786, 790-92 (Alaska 1989) (finding evidence sufficient to overcome the presumption of regularity), abrogated on other grounds by Nageak v. Mallott , 426 P.3d 930 (Alaska 2018).

Dodge contends that Beconovich's vote must be counted because "[a] voter's franchise will not be withdrawn unless the voter's intent to have it withdrawn is clearly and unambiguously expressed." Fischer v. Stout , 741 P.2d 217, 224 (Alaska 1987). But here, the Division did not withdraw Beconovich's right to vote; the Division simply updated his registration address as required by the PFD initiative. The Division's decision to change his voter registration was proper. And since by this change he was no longer registered in House District 1, his vote could not be counted in the District 1 election.